## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**KELLY L. STONE,**                                    :

                                    **Plaintiff,**     :     **CIVIL ACTION NO. 3:10-0442**

                **v.**                                 :
                                                             **(MANNION, M.J.)**
**DEREK E. FELSMAN, and MARK E.**                      :
**SHUTKUFSKI,**
                                                       :
                            **Defendants.**

## MEMORANDUM AND ORDER[1]

Pending before the court is defendants' motion for partial summary judgment. (Doc. No. 29). For the reasons set forth below, the motion will be **GRANTED** in part and **DENIED** in part.


## I.     FACTS AND PROCEDURAL BACKGROUND[2]

On March 1, 2008, at approximately 1:15 p.m., an anonymous caller reported that there were three black males and a female arguing inside and

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party.

outside of a tan or gold colored vehicle in the area of 100 Main Street in Delaware Water Gap, Pennsylvania. *Id.* Trial Tr. 3:24-4:3 April 14, 2008. This call was placed to Monroe County Control Center who then relayed the call to the Pennsylvania State Police. *Id.* at 7:23-8:3. Based on that information, defendants Felsman and Shutkufski were dispatched to the scene. *Id.* at 3:21-4:5.

When defendants Felsman and Shutkufski arrived at the 100 block of Main Street, they observed a black male and a white female standing on the sidewalk outside of a car, and two black males sitting inside of a car, who appeared to be engaged in conversation. *Id.* at 6:25-7:16, 11:22-12:6. Consequently, the defendants approached those individuals as they believed they matched the description provided by the dispatcher. *Id.* at 12:9-17.

Defendant Felsman began speaking to the black male and white female who were standing on the sidewalk near the car. *Id.* at 12:18-13:7. While defendant Felsman was speaking with the black male and white female who were on the sidewalk, defendant Shutkufski approached the passenger side of the vehicle. *Id.* at 17:14-18:6. The plaintiff, Kelly Stone, was seated in the front passenger seat, and was engaged in a conversation on his cell phone. *Id.* at 46:9-22. As such, defendant Shutkufski knocked on the front passenger

2

window, in a aggressive manner, in order to speak with the plaintiff. *Id.* at 46:24-47:4, 54:21-25. Startled, the plaintiff told defendant Shutkufski that he had not done anything wrong, and according to the defendant, the plaintiff also used some profanity. *Id.* at 48, 82:5-83:2. Defendant Shutkufski subsequently directed the plaintiff to get off of his cell phone, get out of the vehicle and to produce his license. *Id.* at 61:19-62:25. The plaintiff ultimately complied with the commands to exit the vehicle and to produce his license. *Id.* However, the plaintiff remained on the phone, although he did not have his phone up to his ear when he exited the vehicle. *Id.* at 23:21-22; 96:13-97:1.

After Stone exited the vehicle, he attempted to explain to defendant Shutkufski that he was not involved in the argument which was nothing more than two friends arguing, and that the argument had ended. *Id.* at 80:23-83-2. Defendant Shutkufski continued to talk to Stone in a aggressive, overtly hostile, loud voice, spiced with profanities. *Id.* at 80:8-87:25. As such, plaintiff continued to request that defendant Shutkufski speak to him in a respectful tone. *Id.* at 83:4-13. Defendant Shutkufski then ordered the plaintiff to "get the fuck off the fucking phone." *Id.* at 83:13-14. The plaintiff then briefly removed the phone from his ear, but then brought the phone back to his ear in order

3

to resume his conversation. *Id.* at 83:15-22.

At that point, defendant Shutkufski struck the cell phone out of plaintiff's hand. *Id.* at 84:2-3. As a result, the phone broke when it hit the ground. *Id.* Plaintiff then said "did you see that, they broke my fucking phone." *Id.* at 84:5-7.

The plaintiff was then arrested, thrown to the ground, and knocked unconscious. *Id.* at 84:7-17. When plaintiff woke up, he was face down on the ground with handcuffs on. *Id.* at 87:5-7. He was then picked up off the ground, and, at that point, plaintiff called out to his friend, requesting for him to call his father. *Id.* at 87:9-16. Plaintiff also told defendant Shutkufski that what they did to him was "fucked up." *Id.* at 87:14-20. Defendant Shutkufski replied that he should call Al Sharpton. *Id.* at 87:20-21.

Plaintiff was then taken to the Swiftwater barracks where he was interrogated about drug dealers and gangs. *Id.* at 98:7-10. He was subsequently issued a citation for disorderly conduct. *Id.* at 110: 25. Plaintiff plead not guilty, and was acquitted of the disorderly conduct charge. *Id.* at 110:5-6.

Based on the foregoing, the plaintiff commenced this action by filing a complaint on February 27, 2010. (Doc. No. 1). Plaintiff brings claims against

4

defendants Felsman and Shutkufski for violating his First, Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. §1983, as well as claims under 42 U.S.C. §§1981 and 1985(3). *Id.* In addition, the plaintiff brings claims for assault, battery, false arrest, false imprisonment and malicious prosecution under Pennsylvania state law. *Id.*

On September 23, 2011, the defendants filed a motion for summary judgment that was accompanied by a statement of facts and a brief in support. (Doc. No.'s 29, 30,& 31). Accordingly, on October 11, 2011, the plaintiff filed a brief in opposition that was accompanied by a statement of facts. (Doc. No.'s 32 & 33), and on October 17, 2011, the defendants filed a reply brief. (Doc. No. 34).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901

F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this

initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp., 477 U.S. at 322-23*; *Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)*.[3]

## IV.   LEGAL ANALYSIS

Defendants have raised various arguments as to why they are entitled to summary judgment. The court will consider these arguments below.

---

[3] If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex, 477 U.S. at 323*, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court-- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

### A.    Fourth Amendment

Unreasonable searches and seizures are prohibited by the Fourth Amendment. U.S. CONST. amend. IV. "The Fourth Amendment's requirement that searches and seizures be founded upon objective justification, governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Mendenhall*, 446 U.S. 544, 551 (1980) (internal quotation marks omitted). Where the encounter between the police and the person questioned is consensual in nature, i.e., a mere encounter, no Fourth Amendment claim arises. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Law enforcement officers do not violate the Fourth Amendment "merely by approaching individuals on the street or in public places," putting questions to those "willing to listen," and "ask[ing] for identification" even absent any "basis for suspecting a particular individual." *United States v. Drayton*, 536 U.S. 194, 200, 201 (2002). Rather, the protections of the Fourth Amendment are triggered when an encounter loses its consensual nature. In other words, a Fourth Amendment seizure has occurred if an individual is "restrained" by an officer's use of "physical force or show of authority." *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. July 30, 2009) (quoting *Bostick*, 501 U.S. at 434). "To be clear, a seizure

'requires *either* physical force ... *or*, where that is absent, *submission* to the assertion of authority.'" *Id*. at 313 (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). "[T]he test for [the] existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628; *see also* *Commonwealth v. Wood*, 833 A.2d 740, 745 (Pa. Super. 2003) ("[I]t is axiomatic that our courts discern whether a person has been seized by determining whether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave.") (internal quotation marks omitted).

In reaching a determination as to whether an encounter is a search or seizure for Fourth Amendment purposes, one is "require[d] to consider[] ... all the circumstances surrounding the encounter." *Smith*, 575 F.3d at 312 (quoting *Bostick*, 501 U.S. at 439). Our case law looks to a variety of factors indicative of a seizure: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id*. at 313 (quoting *Mendenhall*, 446

U.S. at 554). Furthermore, "[a]ny inquiry into an alleged seizure *must* begin by determining when the seizure occurred." *Id*. at 312 (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008)).

Even if an individual is subject to an investigatory detention or seizure, *Terry*, and cases which follow it, make clear that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). As such, an officer's detention of an individual must have been based on something more substantial than an "inchoate and unparticularized suspicion or 'hunch.'" *Johnson*, 332 F.3d at 206 (citing *Terry*, 392 U.S. at 27). Accordingly, officers must be able to point to some objective manifestation that an individual was, or was about to be, engaged in criminal activity. *See id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417 1981)).

Moreover, whether or not an officer has an articulable suspicion is an objective test:

> Because reasonable suspicion is an objective test, we examine the facts within the knowledge of [the police officer] to determine the presence or nonexistence of reasonable suspicion; we do not examine the subjective beliefs of [the police officer] to

determine whether he thought that the facts constituted reasonable suspicion. Additionally, it must be noted that, because the *Terry* reasonable suspicion standard is a commonsensical proposition, courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street.

*United States v. Foreman*, 369 F.3d 776, 781-82 (4th Cir. 2004) (brackets and citations omitted). *See also Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety*, 411 F.3d 427, 440-41 (3d Cir. 2005) (the defendant officer's subjective motivation or purpose is not central to the Fourth Amendment inquiry). Furthermore, this objective test is one of reasonableness given the totality of the circumstances which can include an individual's location, a history of crime in the area, an individual's nervous behavior and evasiveness, and an officer's commonsense judgments and inferences about human behavior. *Johnson*, 332 F.3d at 206 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000)) (internal quotation marks omitted). Consequently, the ultimate question is whether a reasonable, trained officer standing in that officer's shoes could articulate specific reasons justifying the detention of that individual. *See id.*

As discussed above, "[a]ny inquiry into an alleged seizure *must* begin by determining when the seizure occurred." *Smith*, 575 F.3d at 312 (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008)). As an initial

matter, the court notes the parties do not appear to dispute the fact that the

plaintiff was detained prior to his arrest, namely that the defendants

conducted an investigatory stop when they arrived at the scene.[4]/[5]

Consequently, the court must now determine if the seizure of the

plaintiff was constitutionally sound. The defendants argue that the seizure of

plaintiff was justified because the plaintiff and the individuals he was with

matched the description provided in the anonymous tip.

The court cannot agree that the detention of the plaintiff was justified

---

[4] Nevertheless, the plaintiff contends that he was seized when defendant Shutkufski ordered that he produce identification, and that he get out of the vehicle. The record indicates that while plaintiff was seated in the passenger side of the car, defendant Shutkufski knocked aggressively on the window and then stated, "Let me see your fucking license" and then directed the plaintiff to "Get out of the car." Trial Tr. 82:5-17. In addition, the plaintiff asserts that throughout the course of the incident, defendant Shutkufski spoke to him in an aggressive, overly hostile, loud voice, spiced with profanities. Moreover, in defendants' reply brief, they concede that during the investigatory stop the plaintiff's identification was *demanded*. (Doc. No. 34 at 8). As such, the court finds that the plaintiff has adduced evidence that due to the asserted tone of defendant Shutkufski's voice, a reasonable person would not have found that he was free to walk away. *See United States v. Smith*, 575 F.3d 308 (3d Cir. 2009) (A request for identification may constitute a seizure where the officer or officers: had physical contact with the person, or used direct language indicating that a failure to comply with the request would lead to an arrest, or *used a threatening tone*, or displayed their weapons in a way which is novel or unusual for police officers in non-emergency situations.).

[5] The court notes that defendant Shutkufski testified that the plaintiff was not free to walk away until he was identified. Trial Tr. 60:9-17.

12

solely on the basis that the individuals appeared to match the description of

the individuals given via the anonymous tip. Both the Supreme Court, and the

Third Circuit have explained:

> an anonymous tip . . . without additional corroboration, "lack[s] the 'indicia of reliability' needed to justify a stop under the reasonable suspicion standard." *Virginia v. Harris*, 130 S. Ct. 10, 10 (2009); *Florida v. J.L.*, 529 U.S. 266, 270 (2000); *United States v. Brown*, 448 F.3d 239, 249 (3d Cir. 2006). An anonymous tip can only be the basis for reasonable suspicion if accompanied by specific indicia of reliability. *J.L.*, 529 U.S. at 270. We consider five factors to assess whether a tip is reliable:

>> (1) The tip information was relayed from the informant to the officer in a face-to-face interaction such that the officer had an opportunity to appraise the witness's credibility through observation.

>> (2) The person providing the tip can be held responsible if her allegations turn out to be fabricated.

>> (3) The content of the tip is not information that would be available to any observer . . .

>> (4) The person providing the information has recently witnessed the alleged criminal activity.

>> (5) The tip predicts what will follow, as this provides police the means to test the informant's knowledge or credibility [.]

> *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008). We have also recognized other facts which serve to bolster an insufficient tip, including: (1) presence of the suspect in a high-crime area; (2) presence of the suspect on the street at a late hour; (3) a suspect's nervous or evasive behavior; and (4)

> any behavior by the suspect that conforms to an officer's
> specialized knowledge of criminal activity. *Id.*

*See United States v. Coleman*, 383 Fed. Appx. 180, 184-85 (3d Cir. 2010).

In this case, the court cannot find that the tip implicates any of the factors

outlined in *Torres*. As indicated above, the tip was given from an anonymous

individual via a phone call. As such, the tip was clearly not given face-to-face

and the person who provided the tip cannot be held responsible. Additionally,

anyone could have observed the reported argument. Moreover, there is no

indication that the individual who provided the anonymous tip actually

witnessed any criminal activity, as the individual had observed an argument

that occurred on the street. Furthermore, the tip did not predict any future

activity, nor were the individuals described to have been located in a high

crime area or present on the street at a late hour. In addition, the defendants

have not identified any behavior by the plaintiff that conforms to an officer's

specialized knowledge of criminal activity. To the contrary, the record

indicates that the plaintiff was sitting in the passenger side of a parked car,

talking on his cell phone, in the middle of the day. To the extent the

defendants have asserted that the plaintiff was on his cell phone during the

incident, upon construing the facts in a light most favorable to the plaintiff, it

does not appear that the plaintiff was evasive as he ultimately complied with

14

the officer's requests to exit the vehicle, and to provide identification.[6] Finally, the court notes that even if the anonymous tip was reliable in identifying the individuals who were arguing, "[t]he reasonable suspicion . . . requires that a tip be reliable in its assertion of illegality, not just its tendency to identify a determinate person." *J.L.*, 529 U.S. at 272. In sum, the court cannot find that the unknown caller's tip "possessed sufficient indicia of reliability, when considering the totality of the circumstances, for us to conclude that the officers possessed an objectively reasonable suspicion sufficient to justify a *Terry* stop." *See Brown*, 448 F.3d at 250.

Consequently, the defendants' motion for summary judgment on plaintiff's Fourth Amendment claim will be denied.

## B.    Fourteenth Amendment Claims

Defendants argue that they are entitled to summary judgment on plaintiff's Fourteenth Amendment due process claims regarding the asserted unlawful seizures and use of force. The court agrees. "Where a particular Amendment provides an explicit textual source of constitutional protection

---

[6] Moreover, the plaintiff appears to have been seized beginning when his identification was demanded, and, therefore, plaintiff's asserted demeanor with regards to his cell phone was not yet known to the defendants. In any event, as indicated above, it does not appear that plaintiff's use of his cell phone bolstered the reliability of the anonymous tip.

15

against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (quotation marks omitted). Because plaintiff's Fourth Amendment claims are identical to his Fourteenth Amendment claims, he must bring his claims pursuant to the Fourth Amendment, the more explicit constitutional amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard"); *Fagan v. City of Vineland*, 22 F.3d 1296, 1305 n. 5 (3d Cir. 1994) (excessive force claims against the police are actionable under the Fourth Amendment rather than the substantive component of the Due Process Clause of the Fourteenth Amendment); *Tolan v. Fedorchak*, No. 07-3870, 2009 U.S. Dist. LEXIS 89907, at *15-16 (M.D. Pa. Sept. 28, 2009) ("Here, a specific Constitutional provision, the Fourth Amendment, 'provides [Plaintiff with] an explicit textual source of constitutional protection' against unlawful seizures. *Albright*, 510 U.S. at 271. This Court, therefore, need not separately address Tolan's

16

Fourteenth Amendment due process claim.").

### C.  First Amendment Retaliation[7]

"The First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *McCoy v. Edwards*, No. 06-1142, 2009 U.S. Dist. LEXIS 53071, at *24 (M.D. Pa. June 23, 2009) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). A claim for First Amendment retaliation has three elements (1) that plaintiff engaged in conduct or speech protected by the First Amendment; (2) that the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that the protected activity caused the retaliation. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). As relevant here, there is an additional

---

[7] Although not addressed by the parties, the court notes that plaintiff's complaint alleges "a violation of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution to be free from retaliation for engaging in protected speech and conduct." (Doc. No. 1 at 8). However, in light of the fact that, "the First Amendment . . . provides an explicit textual source of constitutional protection to Plaintiff . . . any reliance on the substantive component of the Due Process Clause is misplaced." *See Albright v. Oliver*, 510 U.S. at 273 (quoting *Graham*, 490 U.S. at 395) (quotation marks omitted). Accordingly, plaintiff's retaliation claims based on his right to free speech are properly brought under the First Amendment, and not the Fourteenth Amendment. *See Savokinas v. Borough of Avoca*, No. 07-2311, 2010 U.S. Dist. LEXIS 3734, at *13-15 (M.D. Pa. Jan. 19, 2010).

component of a First Amendment retaliation claim when a plaintiff's First Amendment claim is for retaliatory prosecution. Specifically, the plaintiff must also plead and prove an absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006); *Miller v. Mitchell*, 598 F.3d 139, 154 (3d Cir. 2010) (probable cause element applies even where the same individual acted as both investigator and prosecutor).

Here, the dispute appears to center around the first element, and what constitutes protected speech under the First Amendment. "Except for certain narrow categories deemed unworthy of full First Amendment protection – such as obscenity, 'fighting words' and libel – all speech is protected by the First Amendment." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282-83 (3d Cir. 2004). *See also Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942) ("First Amendment protection does not extend to the lewd and obscene, the profane, the libelous, and the insulting or fighting word."). "Fighting words are those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace. To be punishable, words must do more than bother the listener, they must be nothing less than 'an invitation to exchange fisticuffs.'" *McCoy*, 2009 U.S. Dist. LEXIS 53071, at *24-25. Accordingly, the Third Circuit has explained:

18

This is equally true when the words are spoken in the presence of police officers. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987) (holding that ordinance making it unlawful to interrupt a policeman in the execution of his duty was overbroad). Indeed, the Supreme Court has suggested that the "fighting words" exception "might require a narrower application in cases involving words addressed to a police officer, because 'a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'"" *Id.* at 462 (quoting *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974).

On the specific subject of "profane" words, the Supreme Court has held that even those words alone, unaccompanied by any evidence of violent arousal, are not "fighting words," and are therefore protected speech. *Cohen v. California*, 403 U.S. 15, 20 (1971) . . . The [Supreme] Court emphasized that even offensive and distasteful words must be protected, for "one man's vulgarity is another's lyric," and courts cannot make principled distinctions on matters of taste and style. *Id.* at 25. It is the function of words to convey "not only ideas capable of relatively precise, detached explication, but otherwise inexpressible emotions as well." *Id.* at 26. The emotive function of an expletive "may often be the more important element of the overall message sought to be communicated," *id.*; so long as one does not incite violence, one should not be forced to express one's anger or disapproval in measured terms.

*Johnson v. Campbell*, 332 F.3d 199, 212-14 (3d Cir. 2003) (finding that swearing words spoken to a police are not "fighting words"). *See also Hill*, 428 U.S. 451, 261, 462-63 (1987) (the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers and

includes the ability to oppose and challenge police action.).

The defendants urge the court to find that they are entitled to summary judgment on plaintiff's First Amendment retaliation claim because the plaintiff cannot establish that he engaged in any conduct or protected speech by the First Amendment. More specifically, the defendants argue that the plaintiff's speech did not relate to a matter of public concern, and, therefore, the plaintiff's speech was not protected by the First Amendment.

The court finds that the defendants' argument is misplaced. It appears that the defendants are relying on the standard applicable to a plaintiff, who is a *public employee*, bringing a First Amendment retaliation claim. Under that circumstance, a public employee's speech is protected activity if "the statement involved a matter of public concern." *See* *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006). However, when a First Amendment retaliation claim is brought by a private citizen, the individual's speech need not be on a matter of public concern in order to constitute protected activity. *See* *Williams v. Town of Greenburgh*, 535 F.3d 71, 77 (2d Cir. 2008) ("Because Williams was not a public employee when he criticized Bland, his speech need not have been on a matter of public concern for it to fall within the protection of the First Amendment for the purposes of this

20

action."). Thus, as explained above, a private citizen's speech is entitled to First Amendment protection unless it falls into one of the "narrow categories deemed unworthy of full First Amendment protection." *Eichenlaub*, 385 F.3d at 282-83.

Consequently, the court must determine what the relevant speech is in order to determine if it is entitled to First Amendment protection. According to the plaintiff, the relevant speech was his ongoing cell phone conversation regarding personal matters, and his subsequent exchange with defendant SHUTKUFSKI after his cell phone broke.  More specifically, plaintiff indicates that after defendant Shutkufski knocked the cell phone out of his hand, he stated "why did you hit me" and "they broke my fucking phone."

With respect to plaintiff's comments "why did you hit me" and "they broke my fucking phone," the court finds that the plaintiff's speech is entitled to First Amendment protection. *Johnson*, 332 F.3d at 212-14 (finding that swearing words spoken to a police are not "fighting words"). However, with respect to plaintiff's alleged protected activity for speaking on his cell phone, the court is unable to find that this warrants First Amendment protection. Specifically, the plaintiff has failed to come forward with any credible evidence which indicates what the substance of the conversation was, or that the

defendants knew what the plaintiff was talking about on the phone. Without any such evidence, the court cannot find that plaintiff's cell phone conversation amounted to protected speech.

In sum, to the extent plaintiff claims that his speech directed at the defendants, which involved swearing, was protected by the First Amendment, the court agrees. However, as explained above, the court cannot find that plaintiff's cell phone conversation, itself, was protected speech as there is no indication in the record as to what the substance of his conversation regarded.

As defendants have failed to advance any alternative arguments as to why they are entitled to summary judgment on plaintiff's First Amendment retaliation claim, the defendants motion for summary judgment on this claim will be denied.

### D.    Claims under 42 U.S.C. §1981

Section 1981 requires that all persons in the United States have "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. §1981(a). "[I]n order to succeed on a claim under

§1981, a plaintiff must generally demonstrate: (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in §1981. . . []." *Schultz v. Wilson*, 304 Fed. Appx. 116, 119 (3d Cir. 2008) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)). "Because those with racist intentions do not always verbalize their pernicious motives, a plaintiff may prove discriminatory intent based on the totality of the circumstances." *See Warren v. Twp. of Derry*, No. 04-2798, 2007 U.S. Dist. LEXIS 19537, at *37-38 (M.D. Pa. Mar. 20, 2007) (citation and quotations marks omitted).

The defendants argue that they are entitled to summary judgment on plaintiff's Section 1981 claim because the record establishes that plaintiff's race did not play any role in the incident involving the defendants, and as such, there is no evidence of intentional discrimination. However, by way of response, the plaintiff urges the court to find that the defendants' actions demonstrated a discriminatory animus because (1) the defendants had singled out the plaintiff solely because of his skin color, (2) after the plaintiff was arrested defendant Shutkufski told him, if he had a complaint, to call Al Sharpton, and (3) after the plaintiff was brought back to the Swiftwater

barracks, he was questioned about gang bangers and drugs. In addition, the plaintiff asserts that defendant Shutkufski continually interjected racial overtones into the incident by stating that the plaintiff call him a "nigger." (Doc. No. 32 at 25-26).

Based on the evidence that plaintiff has adduced, the court finds that summary judgment is only appropriate with respect to defendant Felsman. First, the court does not find that plaintiff was singled out due to his race. The record indicates that the defendants were dispatched to an argument involving black males. As such, this appears to be different from a situation where the defendants had no reason to consider approaching the plaintiff, and the other males, he was with. Second, the court does not agree that the fact that plaintiff was questioned about gang bangers and drugs at the Swiftwater barracks supports a finding that the defendants purposefully discriminated against him. More specifically, the record indicates that the plaintiff was questioned by an investigator at the Swiftwater barracks, and not the defendants. Third, the court finds that defendant Shutkufski's comment regarding Al Sharpton could be interpreted to contain some evidence of a

24

discriminatory animus as the remark does not appear to be race-neutral.[8] *See Wichard v. Cheltenham Twp.*, No. 95-3969, 1996 U.S. Dist. LEXIS 12660, at *27 (E.D. Pa. Aug. 29, 1996) (permitting Section 1981 claim to survive summary judgment where an arresting officer yelled a racial epithet at the plaintiff). Since the plaintiff has come forth with some evidence of a discriminatory animus with respect to defendant Shutkufski, the court finds that defendant Shutkufski's motion for summary judgment on this claim should be denied, however, defendant Felsman's shall be granted.

### E.    Claims under 42 U.S.C. §1985(3)

Section 1985(3) provides a cause of action against a person who conspires "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. §1985(3). In order to successfully bring an action under §1985(3), a plaintiff must prove that: "(1) defendants engaged in a conspiracy, (2) the conspiracy's purpose was to deprive either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws, (3) defendants

---

[8] In addition, there appears to be a genuine dispute of fact as to whether the plaintiff ever called defendant Shutkufski a "nigger." *See* Trial Tr. 49:2-12; 80:14-15.

committed an act in furtherance of the conspiracy, and (4) defendants' actions resulted in an injury to the plaintiff's person or property or a deprivation of the plaintiff's rights or privileges as a United States citizen." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006). In addition, a §1985(3) claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action in order to state a §1985(3) claim." *Id.* at 135 (citation and quotation marks omitted).

As discussed above, the only evidence from which one might find that either defendant acted with a discriminatory racial animus involves defendant Shutkufski. Accordingly, the court finds that the defendants are entitled to summary judgment on plaintiff's claims brought under Section 1985. *See Jackson v. Mills*, No. 96-3751, 1997 U.S. Dist. LEXIS 14467, at *29-30 (E.D. Pa. Sept. 4, 1997) ("The only evidence from which one might find that any defendant acted with discriminatory racial animus involves Officer Moors. There is no evidence that any other defendant with whom Officer Moors collaborated or could have conspired made a racial remark or acted with a discriminatory purpose. Plaintiff has not sustained a §1985 claim."). *See also Warren v. Twp. of Derry*, No. 04-2798, 2007 U.S. Dist. LEXIS 19537, at *34 (M.D. Pa. Mar. 20, 2007) (noting that a civil conspiracy requires at least two

actors).

###   F.      State Law Claims

The plaintiff brings claims for assault, battery, false arrest, false imprisonment and malicious prosecution[9] under Pennsylvania law. Defendants argue that plaintiff's state law claims are barred by sovereign immunity. The doctrine of sovereign immunity bars damage claims for state law torts against "the Commonwealth, and its officials and employees acting within the scope of their duties." 1 Pa. Const. Stat. Ann. §2310. The statute

---

[9] The court notes that in plaintiff's brief in opposition, he appears to indicate that he has also brought a federal malicious prosecution claim under Section 1983. The court disagrees. A review of the complaint does not indicate that plaintiff brought a separate claim for malicious prosecution under Section 1983. Accordingly, to the extent the plaintiff is attempting to expand upon the original allegations through argument in his brief, the court finds this to be impermissible. *See DeWees v. Haste*, 620 F. Supp. 2d 625, 635 (M.D. Pa. 2009). Federal pleading standards do not allow a party "to raise new claims at the summary judgment stage. . . . Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint." *Id.* at n.7 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004);*see also Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citation omitted); *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the [summary judgment] responsive papers")). As such, the court finds that the plaintiff has only brought a malicious prosecution claim under Pennsylvania state law.

further provides that such parties "shall continue to enjoy sovereign immunity and official immunity . . . unless the General Assembly shall specifically waive immunity," except for several narrow enumerated exceptions. 1 Pa. Const. Stat. Ann. §2310; *McGrath v. Johnson*, 67 F. Supp. 2d 499, 511 (E.D. Pa.1999). The Pennsylvania General Assembly has only made sovereign immunity inapplicable in certain prescribed circumstances. See 42 Pa. Const. Stat. Ann. §8522(b). The nine exceptions set forth in 42 Pa. Const. Stat. Ann. §8522 relate to: (1) Vehicle liability; (2) Medical-professional liability; (3) Care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) Potholes and other dangerous conditions; (6) Care, custody or control of animals; (7) Liquor store sales; (8) National Guard activities; and (9) Toxoids and vaccines. These nine exceptions to the rule of immunity provided for in the Code must arise out of negligent acts. *Id.* Thus, when an employee of a Commonwealth agency is acting within the scope of his or her duties, the Commonwealth employee is protected by sovereign immunity from the imposition of liability for intentional torts. *See Story v. Mechling*, 214 Fed. Appx. 161,163 (3d Cir. 2007) (citing *La Frankie v. Miklich*, 618 A.2d 1145, 1148 (Pa. Commw. Ct. 1992)).

Nevertheless, the plaintiff urges the court to find summary judgment on

28

plaintiff's state law claims is inappropriate as "defendants have failed to establish on undisputed fact that no reasonable juror could conclude that their conduct in arresting plaintiff, striking him with a baton and then prosecuting him for disorderly conduct amounted to intentional, willful misconduct so as to . . . remove the veil of sovereign immunity." (Doc. No. 32 at 27). The court finds that plaintiff's argument lacks merit. As defendants are employees of the Commonwealth of Pennsylvania, "[w]illful misconduct does not vitiate a Commonwealth employee's immunity because sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability even for intentional torts . . . .". *See Spencer v. Proce*, No. 07-1021, 2010 U.S. Dist. LEXIS 69609, at *6-7 (M.D. Pa. July 13, 2010) (quoting *Holt v. Northwest Pennsylvania Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997). *See also Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010). Consequently, the court finds that defendants are entitled to summary judgment on plaintiff's state law claims, namely for assault, battery, false arrest, false imprisonment and malicious prosecution. *See Becker v. Godboldte*, No. 10-2066, 2011 U.S. Dist. LEXIS 55167, at *27-33 (M.D. Pa. May 24, 2011) (finding Pennsylvania state law claim of malicious prosecution is barred sovereign immunity); *Spencer*, 2010

29

U.S. Dist. LEXIS 69609, at *6-7 (finding Pennsylvania state law claims of assault and battery are barred by sovereign immunity); *Merring v. Bozym*, 07-0848, 2008 U.S. Dist. LEXIS 103187, at *19-21 (M.D. Pa. Dec. 22, 2008) (finding Pennsylvania state law claim of false arrest is barred by sovereign immunity); *Ginter v. Skahill*, No. 04-2444, 2006 U.S. Dist. LEXIS 77038, at *39 (E.D. Pa. Oct. 17, 2006) (finding Pennsylvania state law claim of false imprisonment was barred by sovereign immunity).

IV.    **CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED THAT,** defendants' motion for partial summary judgment, (Doc. No. 29), is **GRANTED** in part and **DENIED** in part. Specifically, defendants' motion for partial summary judgment is **GRANTED** as to plaintiff's Fourteenth Amendment claims under 42 U.S.C. §1983, plaintiff's claim against defendant Felsman under 42 U.S.C. §1981, plaintiff's conspiracy claim under 42 U.S.C. §1985(3), and plaintiff's state law claims for assault, battery, false arrest, false imprisonment and malicious prosecution. In addition, defendants' motion for partial summary judgment is **DENIED** as to plaintiff's First Amendment retaliation claim and Fourth Amendment claims under 42 U.S.C. §1983, and

plaintiff's claims against defendant Shutfkuski under 42 U.S.C. §1981.


                                        s/ *Malachy E. Mannion*
                                        **MALACHY E. MANNION**
                                        **United States Magistrate Judge**

**Date:** November 1, 2011
O:\shared\MEMORANDA\2010 MEMORANDA\10-0442-01.wpd

31